IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**BERNADINE MARTIN, on her own
behalf and as parent and next friend
of KELLY LUFKINS, a minor**,

      Plaintiffs,

vs.                                              No. Civ. 07-489 MCA/RLP

**THE UNITED STATES OF AMERICA,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant's Motion for Partial Summary Judgment and Memorandum in Support* [Doc. 25], filed July 7, 2008. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the motion.

## I. BACKGROUND

The following facts are taken from the complaint or the summary-judgment record and are either uncontroverted or viewed in the light most favorable to Plaintiffs.

On September 2, 2003, then nine-year-old Kelly Lufkins ("Kelly"), accompanied by her mother, Bernadine Martin, presented at the Gallup Indian Medical Center ("GIMC"), complaining of a week-long toothache in the lower left area of her jaw. Kelly's discomfort apparently was so extreme that on the *Health History* form Ms. Martin filled out, she wrote, "[T]his is an emergency! Kelly's in a lot of pain." [Doc. 25; Exh. B (emphasis in original)].

Additionally, in response to the question, "What is the reason for your visit to the dental clinic?" Ms. Martin wrote, "severe tooth pain" and noted that Kelly at that time was taking penicillin, Motrin, Tylenol, and Anbesol "for pain." [Id.].

GIMC dentist, Robert Lloyd, D.D.S., diagnosed the problem as originating in tooth #21, the lower left first premolar, and recommended that Kelly undergo emergency endodontic (root canal) treatment. [Doc. 25; Exh. C]. A form captioned *Emergency Endodontic (Root Canal) Treatment* ("the Treatment Form") explains, among other things, that "[a] root canal is a procedure that is required to save and maintain a tooth when the nerve (inner portion) has become irreversibly infected. . . ." [Id.]. The Treatment Form also explains that (1) the initial, emergency root canal treatment (*i.e.,* the root canal access procedure) is done to relieve pain; (2) the root canal access procedure, which can be done at a walk-in clinic, is *not* a complete root canal treatment; and (3) failure to complete treatment after the root canal access procedure is done can result in further pain, infection, and need for dental surgery. The GIMC can perform the initial root canal access procedure, but patients must then see a private dentist or endodontist to complete the root canal treatment. [Id.].

The Treatment Form lists "[c]ontinued pain" as one of a number of possible risks associated with both the emergency root canal access procedure and the subsequent root canal treatment. [Doc. 25; Exh. C]. There is a circle around "[c]ontinued pain," and other sections of the Treatment Form, explaining the procedure and its purpose and possible consequences, are either circled or underlined. Through her deposition, Ms. Martin testified

that she believed Dr. Lloyd had made these highlights. [Doc. 25; Exh. H, May 1, 2008 Martin depo. at 23].[1]  In any event, Ms. Martin signed the Treatment Form in the space immediately after the line reading, "I have had an opportunity to ask questions about the planned treatment[,]" [id.], and through her deposition testified that, before doing so, she "probably" read and understood the document. [Doc. 25; Exh. H, Martin depo. at 28]

According to Ms. Martin, who was present in the room as Dr. Lloyd worked on Kelly's tooth, Kelly was kicking and screaming during the procedure, and "kept [getting] worse and worse and worse." [Doc. 25; Exh. H, Martin depo. at 26].  Documentation completed by Dr. Lloyd following the procedure confirms that Kelly was "weeping during anesthesia" and also describes her pain, on a scale of zero to five, as being a three. [Doc. 25; Exh. A at 1].  It is undisputed, however, that even before Kelly arrived at the GIMC, "[s]he was in horrible pain. . . ."  [Doc. 25; Exh. H, Martin depo. at 29].

Two days later, on September 4, 2003, Kelly returned to the GIMC for a follow-up visit and reported feeling better. [Doc. 25; Exh. E].  However, by the time she went back

---

[1] The following colloquy took place at Ms. Martin's deposition:

> Q: Can you identify that document?
> A: It says "Emergency room endodontic treatment," and my signature's on it, September 2nd, '03.
> . . .
> Q: Do you know who underlined and circled the various things on this document?
> A: I don't know.
> Q: You don't know if it was Dr. Lloyd or you?
> A: Oh, I don't think it would have been me.

[Doc. 25; Exh. H, Martin depo. at 23].

3

again on September 30, 2003, tooth #21 had become infected. Still, Dr. Lloyd's notes from that visit indicate that "[m]other did not want any infection drained nor dressing change[d]." [Doc. 25; Exh. F at 1]. Instead, "[m]other wanted to try antibiotics first." [Id.]. On October 6, 2003, a different dentist removed tooth #21. [See Doc. 25; Exh. H, Martin depo. at 46].

On May 17, 2007, Kelly and Ms. Martin filed their *Complaint for Dental Negligence* pursuant to the Federal Tort Claims Act, alleging that employees of the GIMC violated the applicable standard of professional care by negligently failing to:

> (a) perform a proper root canal procedure;
> (b) perform a proper extraction of the teeth adjoining tooth #21;
> (c) anesthesize Kelly properly during the procedure;
> (d) attend to and treat Kelly in a timely manner;
> (e) provide an adequate assessment of Kelly's dental condition;
> (f) coordinate and assist in the delivery of a proper plan of dental care for Kelly;
> (g) obtain the informed consent of Kelly and Ms. Martin;
> (h) make a needed and timely orthodontic referral;
> (i) advise Kelly and Ms. Martin of the likelihood of severe pain during the procedure; and
> (j) "measure up" to the requisite standards of care observed in the field of dentistry.

[Doc. 1 at 4-5].

The United States now moves for partial summary judgment with respect to any claims that Dr. Lloyd failed to obtain informed consent from Ms. Martin or to advise her and Kelly of the likelihood that Kelly would experience pain during the procedure (as set forth in allegations (g) and (i) above). [Doc. 25 at 2]. Ms. Martin and Kelly have not filed a response to the government's summary-judgment motion. [See Dkt. in 07cv489 MCA/RLP].

4

**II. ANALYSIS**

    **A.**    **Summary Judgment Standard of Review**

Summary judgment under Fed.R.Civ.P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed.R.Civ.P. 56(e). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id. Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). See Celotex, 477 U.S. at 324. It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526

U.S. 541, 551-52 (1999).  In the District of New Mexico, "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion."  D.N.M.LR-Civ. 7.1(b); see also Hilland v. Akenhead, 33 F.3d 62 (10th Cir. 1994) (unpublished opinion) (affirming district court's granting of defendant's unanswered summary-judgment motion pursuant to Local Rule 7.1's predecessor where district court also had considered issue on the merits).

### B. The Federal Tort Claims Act

Pursuant to the Federal Tort Claims Act ("FTCA"), the United States is made liable (within the scope of its waiver of sovereign immunity)

> for personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  Because this Court must apply the substantive law of the place where the alleged tortious act took place, the Court first considers the elements of a medical malpractice/failure to obtain informed consent action under the law of New Mexico.  See Franklin v. United States, 992 F.2d 1492, 1495 (10th Cir. 1993) ("[W]e resolve questions of liability under the FTCA in accordance with the law of the state where the alleged tortious activity took place.");  Flynn v. United States, 902 F.2d 1524, 1527 (10th Cir. 1990) ("The court must apply the law of the place where the alleged negligence occurred.").

"The informed consent issue arises when a patient is informed that he or she is to be touched in a specific way and is in fact touched in that way but a harmful result arises from a risk about which the patient was not informed." Cooper v. Curry, 589 P.2d 201, 203 (N.M.App. 1978). Pursuant to the doctrine of informed consent, a medical provider must not only obtain consent to treatment, but also inform the patient of sufficient facts to enable the patient to consent intelligently to such treatment. In New Mexico, a failure to obtain informed consent constitutes negligence. Id. Although the traditionally recognized theory of recovery for unauthorized medical treatment has in the past been battery, the doctrine of informed consent is implicated when a patient admittedly has consented to a medical procedure, "but on the basis of an inadequate disclosure of the medical considerations involved, such as potential risks, benefits, and alternative treatment options." Franklin v. United States, 992 F.2d 1492, 1496 (10th Cir. 1993).

In New Mexico, a provider is under a duty to obtain the informed consent of the patient—or, if the patient is a minor, the patient's parent or guardian—to treatment. Moreover, for such consent to be valid, it must be based upon information that a reasonably prudent patient would need to know in deciding whether to undergo the treatment. NMRA, C<small>IV</small>. UJI 13-1104A. More specifically, the provider must communicate to the patient (or the patient's parent or guardian) that information a reasonably prudent patient under similar circumstances would need to know about (1) the patient's condition; (2) alternatives for treatment; (3) inherent and potential hazards of the proposed treatment; and (4) the likely result if the condition were to remain untreated. NMRA, C<small>IV</small>. UJI 13-1104B. Finally, a

provider who fails in his duty to communicate such information as the inherent and potential hazards of treatment is liable for harm to the patient resulting from the treatment if a reasonably prudent patient (or parent or guardian of that patient) under similar circumstances would not have consented to the treatment had he or she known of those hazards. NMRA, Civ. UJI 13-1116A.

"Failure of a [provider] to reasonably disclose to a patient all significant facts concerning medical treatment is malpractice[, and i]n malpractice actions the burden of proof rests on the plaintiff." Demers v. Gerety, 529 P.2d 278, 280 (N.M.App. 1974) (internal citations omitted). A signed consent form indicating the nature of the procedure and the risks associated with it serves as some evidence that the patient (or the patient's representative) gave informed consent. See Augustine v. United States, 810 F.2d 991, 993 (10th Cir. 1987) (in FTCA action, affirming district court's conclusion that physician had obtained patient's informed consent to esophageal balloon-dilation procedure where, among other things, physician had "made a drawing of the procedure on the back of the consent form and the risks of the procedure were clearly noted on the face of the consent form[,] which plaintiff signed").

As an initial matter, the Court again notes that the United States' summary-judgment motion in this case has gone unanswered and, as a consequence, the evidence in this case currently is undisputed. Having said that, the undisputed evidence demonstrates that Dr. Lloyd obtained Ms. Martin's informed consent to perform an emergency root canal access procedure on Kelly, and that he advised them that Kelly might experience pain in the

process.

First, the Treatment Form clearly explains the nature of the procedure, as well as its purpose and possible consequences. A number of areas on the form were circled or underlined. Through her deposition, Ms. Martin testified that she believed this highlighting was made by Dr. Lloyd. Additionally, Ms. Martin's signature appears on the Treatment Form, just below the line stating: "I have had an opportunity to ask questions about the planned treatment." [Doc. 25; Exh. C]. Ms. Martin testified that this was indeed her signature, and also that she "probably" had read and understood the document before signing it.[2] [Id.; Exh. H, Martin depo. at 28]. Finally, the undisputed evidence also demonstrates that Dr. Lloyd advised Ms. Martin and Kelly that Kelly was likely to experience pain during the procedure, as the Treatment Form specifically and expressly warns that continued pain is one of several possible risks associated with the procedure in question, and "[c]ontinued pain" has been circled. [Doc. 25; Exh. C]. For these reasons, the Court concludes that Ms. Martin gave informed consent to the emergency root canal access procedure, and also that she and Kelly were advised of the likelihood of associated pain. Accordingly, the United States' motion for partial summary judgment will be granted.[3]

---

[2] It bears noting that Ms. Martin is an attorney and, as of the time of her deposition, was entering her fourth year as a prosecutor with the McKinley County District Attorney's Office. [Doc. 25; Exh. H, Martin depo. at 5].

[3] Of course, the issue of a provider's alleged negligence in failing to obtain a patient's informed consent to a procedure is separate from the issue of whether the provider was negligent in his performance of that procedure, and "[e]ven when the patient gives informed consent to the treatment, the patient may still have a claim for malpractice in the manner of performance of the treatment." Yount v. Johnson, 915 P.2d 341, 348 (N.M. App. 1996) (Hartz, J., dissenting); see

9

## III. CONCLUSION

For the foregoing reasons, the Court concludes that the United States is entitled to partial summary judgment in its favor with respect to the issue of whether Dr. Lloyd obtained informed consent to perform an emergency root canal access procedure on Kelly Lufkins, and whether he advised Kelly and her mother that she might experience pain in the process. Accordingly. the United States' motion will be granted.

**IT IS, THEREFORE, ORDERED** that *Defendant's Motion for Partial Summary Judgment and Memorandum in Support* [Doc. 25] is **GRANTED**.

**SO ORDERED** this 5th day of November, 2008, in Albuquerque, New Mexico.

_____
 **M. CHRISTINA ARMIJO**
 United States District Judge

---

also NMRA, Civ. UJI 13-1104A ("The fact that a patient expressly or impliedly consents to a proposed [procedure] [treatment] does not mean that the patient consents to the negligent performance of that [procedure] [treatment]. . . ."). This Court does not at this time address the issue of Dr. Lloyd's alleged negligence in the performance of the emergency root canal access procedure, as the sole issue presented in the United States' motion for *partial* summary judgment is whether Dr. Lloyd obtained informed consent to the procedure and whether he cautioned Ms. Martin and Kelly about the likelihood of pain during that procedure. [See Doc. 25 at 2 ("It is [the United States'] position that Dr. Lloyd did obtain the informed consent of Plaintiff Martin in that she was advised that Kelly might experience pain during and after the procedure.")].